PAWAR LAW GROUP P.C.
20 Vesey Street, Suite 1210
New York, New York 10007
212 571 0805 (phone)
*Attorneys for Plaintiff*



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CHEICKNE FOFANA, ABOUBAKER DIAKITE,

                Plaintiffs,

-against-

THE CITY OF NEW YORK, P.O. MOHAMMAD
ARYAKIA, ALEXANDER SANYSHYN,
JOHN and JANE DOES 1-10, et al.,

                Defendants.
-----------------------------------------------------------x

**COMPLAINT**

Jury Demand

JUDGE SCHEINDLIN

        Plaintiffs CHEICKNE FOFANA, ABOUBAKER DIAKITE hereinafter "Plaintiffs") by and through their attorneys, Robert Blossner, Esq. and Vik Pawar, Esq., respectfully allege as follows:

### PRELIMINARY STATEMENT

        1.    Plaintiffs bring this action for injunctive relief, compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. §1981, 1983 and 1988 for violations of their civil rights, as secured by statutes and the Constitution of the United States.

## JURISDICTION

2. The action is brought pursuant to 42 U.S.C. §1981, 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the United States and New York Constitutions.

3. Jurisdiction is found upon 28 U.S.C. §§1331 and 1343.

## VENUE

4. Venue is properly laid in the Southern District of New York under 28 U.S.C. § 1391(b), in that it is the District in which the claim arose.

## JURY DEMAND

5. Plaintiffs respectfully demand a trial by jury of all issues in the matter pursuant to Fed. R. Civ. P. 38 (b).

## FACTS RELATING TO PLAINTIFF FOFANA

6. Plaintiff FOFANA 38 year old immigrant from the war-torn region of West Africa and is a resident of the County, City and the State of New York. FOFANA is a dark skinned African-American male.

7. Defendants are officers of the NYPD and at all times mentioned herein were acting under the color of state law and in their individual, official and supervisory capacities.

8. Plaintiff is employed as an itinerant and makes a living assisting vendors on Broadway and Canal Streets in lower Manhattan.

9. Plaintiff is not a vendor and has never worked as a vendor.

10. Despite the foregoing, plaintiff has been subject to harassment, ridicule, threats of deportation, false arrests and malicious prosecution on three (3) separate occasions by the defendants.

### Incident 1

11. On May 13, 2010, at approximately 10:00 am, plaintiff was lawfully standing on Broadway street next to the vendor who employed him, when he was approached by John Doe defendants who asked to see plaintiff's identification.

12. Plaintiff had committed no crime and the police officer had no reason to question him. Nevertheless, plaintiff produced his identification to the Defendants.

13. Defendants accused Plaintiff of speaking with customers and told Plaintiff, "you have to go to jail".

14. Plaintiff informed defendant that he did not speak with customers and did not sell anything. Plaintiff pointed to the vendor who was present at the scene with his vendor's license and said "he is the vendor."

15. Thereafter, Defendant (John Doe 1) told Defendant (John Doe 2) "You cannot arrest him."

16. Despite plaintiff's protests, and Defendant (John Doe 1) admonition, defendant (John Doe 2) proceeded to arrest plaintiff. Defendants kept Plaintiff in the police van for close to six (6) hours while touring the area and arresting other itinerants.

17. Plaintiff was taken to the 1st precinct and falsely charged with violating 2 administrative codes. Plaintiff was kept in a holding cell for additional eight (8) hours

and was finally released around 12:00 am. Defendant (John Doe 3) ratified this arrest without checking into its veracity.

18. Frustrated by the pattern of abuse and unlawful arrests, plaintiff decided to take his case to trial.

19. Plaintiff was acquitted on December 7, 2010, due to discrepancy in Defendants' testimonies regarding the events surrounding and cause of arrest.

20. All charges against plaintiff were dismissed after countless court appearances.

### Incident 2

21. On August 26, 2012, plaintiff was once again approached by John Roe Defendant while he was standing next to the vendor and questioned why he was standing there.

22. Plaintiff told him that he was only a helper to the licensed vendor who was there at the time and interacting with customers and that plaintiff was not selling any items. John Roe Defendant told Plaintiff "You are making me angry. You have to go to jail."

23. Plaintiff was once again arrested and brought to the 1st precinct. Once again, plaintiff was held for approximately 9 hours.

24. After countless court appearances, the false charges against plaintiff were dismissed on December 20, 2012.

### Incident 3

25. On September 23, 2012, about a month after the second false arrest, plaintiff was once again arrested under similar circumstances by John Roe defendant.

26. Plaintiff was giving directions to a female passerby who asked him for "Prince street" and pointing towards the location when John Roe came up to plaintiff, and falsely stated that he was talking to the female passerby about the merchandise.

27. Plaintiff informed Defendant that he "was giving address to a passerby."

28. Defendant then handcuffed plaintiff, without any cause, around 12:00 pm and again kept him in the police vehicle until 6:00 pm while touring the area and arresting other itinerants.

29. After three (3) hours in police vehicle, plaintiff asked Defendants if he could use a bathroom, which was immediately refused by Defendants.

30. While in the police vehicle touring the area, Plaintiff overheard Defendants stating, "we need one more arrest before returning to the precinct." Plaintiff was the first individual arrested. Thereafter, Defendants arrested six (6) more itinerants.

31. Plaintiff was brought to the same precinct, where he was once again issued tickets on false charges and released 7 hours later.

32. All charges against plaintiff were dismissed by the District Attorney on May 8, 2013 after plaintiff made another round of countless court appearances.

## FACTS RELATING TO PLAINTIFF DIAKITE

33. Plaintiff DIAKITE is a 40 year old immigrant from the war-torn region of West Africa and is a resident of the County, City and the State of New York. DIAKITE is a dark skinned African-American male.

34. Defendants are officers of the NYPD and at all times mentioned herein were acting under the color of state law and in their individual, official and supervisory capacities.

35. Plaintiff is employed as an itinerant and makes a living assisting vendors on Canal Street, New York, New York.

36. Plaintiff is not a vendor and has never worked as a vendor.

37. Despite the foregoing, plaintiff has been subject to harassment, ridicule, threats of deportation, false arrests and malicious prosecution on four separate occasions by members of NYPD from the 1st precinct.

### Incident 1

38. On March 26, 2012, plaintiff was lawfully standing on Canal street when he was approached by defendants, who asked to see plaintiff's identification.

39. Plaintiff had committed no crime and the defendants had no reason to question him. Nevertheless, plaintiff produced his identification to the Defendants.

40. Defendants took plaintiff into custody and falsely accused plaintiff of selling goods on Canal Street without a vendor's license.

41. Plaintiff informed defendant that he does not sell anything and he does not have a vendor's license.

42. Despite plaintiff's protests, defendant proceeded to arrest plaintiff. Plaintiff was taken to the 1st precinct and falsely charged with violating 2 administrative codes. Defendant (supervisor) ratified this arrest without checking into its veracity.

43. All charges against plaintiff were dismissed on August 7, 2012 after countless court appearances.

### Incident 2

44. On April 10, 2012, plaintiff was once again approached by Defendants while he was standing next to the same vendor at the same location.

45. Plaintiff told Defendants that he was only a helper to the licensed vendor.

46. Plaintiff was once again was arrested and brought to the 1st precinct. Once again, plaintiff was held for approximately 9 hours.

47. All charges against plaintiff were dismissed on August 7, 2012, after countless court appearances.

### Incident 3

48. On September 30, 2012, plaintiff watched as defendant approached a vendor and asked for the vendor's license. The vendor pointed to the license hanging from the front of the vendor's table.

49. Frustrated Defendant left the area and arrived approximately 30 minutes later.

50. This time, Defendant approached Plaintiff and asked to see his identification.

51. Plaintiff had committed no crime and defendant had no reason to question him. Nevertheless, plaintiff produced his identification to the Defendant.

52. Defendant took plaintiff into custody and falsely accused plaintiff of selling goods on Canal Street without a vendor's license.

53. Plaintiff informed defendant that he does not sell anything and he does not have a vendor's license.

54. Plaintiff was once again arrested based on similar false charges.

55. Plaintiff was brought to the precinct and held for eight (8) hours before he was given a new court date.

56. All charges against plaintiff were dismissed on January 8, 2013, after countless court appearances.

### Incident 4

57. On March 14, 2013, plaintiff was again arrested by defendants Sanyshyn and Aryakia based on false charges.

58. Plaintiff was falsely charged with being an unlicensed vendor.

59. Once again plaintiff spent hours at the local precinct before he was released and the charges against him eventually dismissed.

### Incident 5

60. On October 4, 2013, plaintiff was once again arrested in the same location and based on similar false charges by Defendants.

61. Once again plaintiff spent hours at the 1st precinct and then released, forced to endure countless appearances before the case was dismissed by the District Attorney on April 22, 2014.

### AS AND FOR A FIRST CAUSE OF ACTION
(False Arrests-Fourth Amendment)

62. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

63. There was no probable cause for the seizure, arrest or the continued incarceration of Plaintiffs, and as such the Defendants' acts resulted in violations of plaintiffs' constitutional rights under the Fourth and Fourteenth Amendments.

64. As a result of the aforementioned conduct of Defendants, Plaintiffs' constitutional right to be free from unreasonable seizure were violated and they sustained physical, economic and emotional injuries.

### AS AND FOR A SECOND CAUSE OF ACTION
(Fourteenth Amendment-Due Process and Malicious Prosecution)

65. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

66. The Defendants' conduct herein was an abuse of executive power so clearly unjustified by any legitimate objective of law enforcement as to be barred by the Fourteenth Amendment. The actions by Defendants deprived the substantive and

procedural due process afforded to Plaintiff and was in violation of Plaintiff's constitutional rights under the Fourth and Fourteenth Amendments.

67. Defendants initiated baseless prosecution against plaintiffs, failed to show up for court dates, refused to inform the DA about the falsity of the charges and continued the prosecution with malice and forced plaintiffs to endure countless court appearances until the false charges were all dismissed in plaintiffs' favor.

68. As a result of the foregoing, Plaintiffs were deprived of their liberty and property interests and right to procedural and substantive due process, causing economic and severe and permanent emotional and physical injuries.

## AS AND FOR A THIRD CAUSE OF ACTION
(*Monell*/Municipal Liability)

69. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

70. Defendants, collectively and individually, while acting under color of state law, engaged in foregoing conduct so as to amount to a custom, practice, and procedure, which is forbidden by the Constitution of the United States.

71. The aforementioned allegations in the complaint are not isolated but a pattern by the officers in the vicinity of the 1st precinct to arrest individuals like plaintiffs and falsely accuse them of being vendors.

72. Upon information and belief these arrests are generated because of the pressure from the NYPD brass to do something about the quality of life crimes and in turn it simply results in arrests of innocent individuals like the plaintiffs.

73. The practice outlined in the complaint are endemic and it represents either a policy or a custom by the NYPD to generate arrests, justify overtime and appease their commanders that they are being productive.

74. The foregoing customs, policies, usages, practices, procedures and rules of the Defendants constituted deliberate indifference to the safety, well-being and constitutional rights of Plaintiff and were the direct and proximate cause and the moving force of the constitutional violations suffered by Plaintiff as alleged herein.

### AS AND FOR A FOURTH CAUSE OF ACTION
(Violation of Section 1981)

75. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

76. Defendants targeted Plaintiffs and discriminated against them by falsely accusing them of crimes because of their race and color and caused them deprivation of constitutional rights described in this complaint.

77. As a result of these actions, Plaintiffs suffered injuries.

### AS AND FOR A FIFTH CAUSE OF ACTION
(Violation of First Amendment Rights)

78. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

79. Plaintiffs have a constitutional right under the First Amendment to travel and be free from unwarranted government intrusion.

80. However, defendants violated plaintiffs' first amendment rights by arresting them for simply being black and simply because he was nearby the vendors who were selling items.

81. Plaintiffs' right to be free and exercise his rights under the First Amendment were violated and they suffered injuries.

### AS AND FOR A SIXTH CAUSE OF ACTION
(Supervisory Liability)

82. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

83. Plaintiffs' injuries herein were caused by the deliberate indifference of the defendant supervisors, who ratified wrongful arrests, without any oversight and rubber-stamped any arrests that came through.

84. In addition, the Defendant's superior officers whose duty it was to review and screen all arrests for propriety upon presentation by the arresting officer to the precinct and command desks routinely ratified such arrests without questioning the facts underlying same.

85. The deliberate indifference by the supervisor encouraged defendant subordinate police officers to continue to engage in unlawful conduct at the expense of the civil rights of innocent individuals.

86. As a result plaintiffs were injured.

### AS AND FOR A SEVENTH CAUSE OF ACTION
(Denial of Right to a Fair Trial)

87. Plaintiffs repeat, reiterate, and reallege each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

88. Defendants fabricated evidence and prepared false documents to charge plaintiffs with false charges.

89. None of these charges were substantiated and were simply trumped up to justify the false arrests of plaintiffs.

90. As a result of these false charges, plaintiffs had to engage in the services of an attorney, take time off from work and family and appear in courts countless times until the charges were dismissed and they were vindicated.

91. As a result of defendants' actions, plaintiff suffered injuries.